IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT KELLY WALTERS,<br><br>    Plaintiff,<br><br>  v.<br><br>EDWARD ALAMEIDA, et. al.,<br><br>    Defendants. | No. C 04-0818 RMW (PR)<br><br>ORDER OF SERVICE;<br>PARTIAL DISMISSAL<br>ORDER |

      Plaintiff, a state prisoner proceeding pro se, filed a civil rights complaint pursuant to 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed in forma pauperis. On May 23, 2006, the court directed plaintiff to file a notice of intent to prosecute, because plaintiff had not communicated with the court for over two years. Plaintiff filed a notice of intent to prosecute on June 12, 2006. On July 7, 2006, plaintiff filed an amended complaint, a motion for temporary restraining order and preliminary injunction with exhibits, and an application to expedite the screening of his amended complaint and motion. In a separate written order, this court granted plaintiff leave to file an amended complaint, denied plaintiff's motion for temporary restraining order without prejudice and granted plaintiff's application to expedite review of the motion and the amended complaint. The court will review plaintiff's amended complaint pursuant to 28 U.S.C. 1915A.

**BACKGROUND**

Plaintiff is serving a state prison sentence at Pelican Bay State Prison ("PBSP"). In April 2003, plaintiff attended a hearing before the Unit Classification Committee ("UCC"). Plaintiff was assisted by Correctional Officer S. Preston, acting as a staff assistant, due to plaintiff's participation in mental health treatment. Plaintiff receives treatment under the California Department of Corrections and Rehabilitation ("CDCR") Mental Health Services Delivery System ("MHSDS"). During the hearing, prison staff asked plaintiff whether he was willing to notify staff immediately of any enemy concerns. Plaintiff was confused by the question and responded, "No, I'm not willing to." Captain S. Wheeler responded that plaintiff should be locked up in administrative segregation, however, plaintiff was already housed in the "ad seg" unit. Plaintiff then explained that he wanted to participate in prison programs without problems, wanted to work, and did not want to cause problems for anyone, but that he was concerned about agreeing to notify prison staff of enemy concerns. If plaintiff agreed to the condition, plaintiff knew that the prison would issue a "CDCR-128G Chrono" with this information. If other inmates found out about plaintiff's willingness to report on his enemy, it would place plaintiff's life at risk and he would be known as an informant. Counselor Lucarelli stated that this was not a big deal, that this was the way it was done at PBSP and that inmates that did not agree to this condition were placed in administrative segregation. Plaintiff expressed his fears and concerns again, but the committee did not change its position. Eventually, plaintiff agreed to this condition out of his fear that he would be placed in administrative segregation. See Complaint at 5-6.

On April 30, 2003, prison officials delivered plaintiff's CDCR Chrono 128G to another inmate. Plaintiff's statement at the hearing, expressing his fear of notifying staff of enemy concerns, was included in the CDCR Chrono. Plaintiff believes that PBSP staff were aware of plaintiff's concerns and fears of being a known informant and disregarded these concerns in order to obtain plaintiff's consent to the condition. Plaintiff maintains that this policy was required by PBSP officials in order to limit PBSP's liability for inmate assaults by known enemies. See Complaint at 6-7.

Order of Service; Partial Dismissal Order
P:\pro-se\sj.rmw\cr.04\Walters818srvmisc     2

Plaintiff names the following defendants in his amended complaint: California Department of Corrections and Rehabilitation ("CDCR"); Edward Alameida, Director of CDCR in April 2003; Joe McGrath, PBSP Warden; Lethal Polk, PBSP Associate Warden; PBSP Correctional Couselor M.J. Nimrod; PBSP Correctional Counselor T.D. Lucarelli; PBSP Captain S. Wheeler; PBSP Correctional Couselor J. Browman; and PBSP Correctional Officer S. Preston. Plaintiff alleges that defendants' violated his Eighth Amendment right to personal safety and to be free of foreseeable harm, his right to due process, and his right to equal protection. Additionally, plaintiff alleges state tort claims that prison officials acted negligently in breach of mandatory duties (Cal. Civil Code § 1714) and negligent misrepresentation (Cal. Civil Code §§ 1572, 1710) which placed him at risk of injury and caused plaintiff to suffer emotional distress. Plaintiff seeks injunctive relief and monetary damages.

## DISCUSSION

A.   Standard of Review

Federal courts must engage in a preliminary screening of cases in which prisoners seek redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). In its review the court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. Id. at 1915A(b)(1),(2). Pro se pleadings must, however, be liberally construed. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged deprivation was committed by a person acting under the color of state law. West v. Atkins, 487 U.S. 42, 48 (1988).

B.   Plaintiff's Claims

**1.   Eighth Amendment**

Plaintiff alleges that defendants McGrath, Alameida, Polk, Nimrod, Wheeler, Lucarelli, Browman and Preston were deliberately indifferent to his safety after plaintiff expressed his fear

and concerns for his safety if he agreed to the condition to inform on known enemy concerns at PBSP.

The Eighth Amendment requires that prison officials take reasonable measures to guarantee the safety of prisoners. Farmer v. Brennan, 511 U.S. 825, 832 (1994). In particular, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. Id. at 833; Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005); Hoptowit v. Ray, 682 F.2d 1237, 1250 (9th Cir. 1982); Gillespie v. Civiletti, 629 F.2d 637, 642 & n.3 (9th Cir. 1980). The failure of prison officials to protect inmates from attacks by other inmates or from dangerous conditions at the prison violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious; and (2) the prison official is, subjectively, deliberately indifferent to inmate safety. Farmer, 511 U.S. at 834; Hearns, 413 F.3d at 1040-41.

A prisoner need not wait until he is actually assaulted to state a claim and obtain relief. See Farmer, 511 U.S. at 845; Woodhous v. Virginia, 487 F.2d 889, 890 (4th Cir. 1973); Stickney v. List, 519 F. Supp. 617, 620 (D. Nev. 1981). If the court finds the Eighth Amendment's objective and subjective requirements satisfied, it may grant appropriate relief. See Farmer, 511 U.S. at 845-46; Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986). But cf. 42 U.S.C. § 1997e(e) (requiring physical injury in order to bring claim for mental or emotional injury).

A prisoner may state a § 1983 claim under the Eighth Amendment against prison officials only where the officials acted with "deliberate indifference" to the threat of serious harm or injury to an inmate by another prisoner, see Berg, 794 F.2d at 459; see also Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989) (deliberately spreading rumor that prisoner is snitch may state claim for violation of right to be protected from violence while in state custody). A prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the standard for criminal recklessness is met, i.e., the official knows of and disregards an excessive risk to inmate health or safety. See Farmer, 511 U.S. at 837. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. See id.

1  However, an Eighth Amendment claimant need not show that a prison official acted or failed to
2  act believing that harm actually would befall an inmate; it is enough that the official acted or
3  failed to act despite his knowledge of a substantial risk of serious harm. See id. at 842; see also
4  Robins v. Meecham, 60 F.3d 1436, 1439-40 (9th Cir. 1995) (bystander-inmate injured when
5  guards allegedly used excessive force on another inmate need not show that guards intended to
6  harm bystander-inmate). This is a question of fact. Farmer, 511 U.S. at 842.

7  Allegations in a pro se complaint sufficient to raise an inference that the named prison
8  officials acted with deliberate indifference – i.e, that they knew that plaintiff faced a substantial
9  risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it –
10 states a "failure-to-protect" claim. Hearns, 413 F.3d at 1041-42.

11 Liberally construed, plaintiff's allegations that defendants provided a copy of his CDCR
12 Chrono containing his statement that he would report on known enemy concerns to another
13 inmate states a cognizable failure to protect claim. The court will order service of this claim.

14 **2.    Due Process**

15 Plaintiff maintains that defendants violated his state and federal right to due process by
16 requiring him to agree to notify staff of any enemy concerns or forfeit his liberty interest in his
17 placement in the PBSP general population and be retained in the segregated housing unit.
18 Plaintiff alleges that defendants Wheeler, Lucarelli and Browman violated his right to due
19 process when they knowingly asked questions that required an advisement and waiver of
20 plaintiff's right against self-incrimination. Plaintiff claims that defendants violated his right to
21 due process by failing to classify plaintiff's agreement to this PBSP policy to notify staff of
22 enemy concerns as confidential. Plaintiff further alleges that defendant S. Preston violated his
23 right to due process based upon Preston's failure to intervene on Plaintiff's behalf and
24 communicate Plaintiff's concerns to the hearing committee, as plaintiff's staff assistant. Plaintiff
25 was a mental health care inmate at the time of the April 2003 hearing.

26 Plaintiff's due process claim concerning his privilege against self-incrimination is not
27 cognizable. The Fifth Amendment privileges an individual not to answer official questions put
28 to him in any proceeding, civil or criminal, formal or informal, where the answers might

incriminate him in future criminal proceedings. Baxter v. Palmigiano, 425 U.S. 308, 316 (1976). "The central standard for the privilege's application has been whether the claimant is confronted by substantial and 'real,' and not merely trifling or imaginary, hazards of incrimination." Marchetti v. United States, 390 U.S. 39, 53 (1968). Here, plaintiff does not state a claim for relief because the facts alleged do not present a substantial and real potential for plaintiff's self-incrimination. Plaintiff describes his situation as a "catch 22" that he must report known enemy concerns and face being labeled as an informant, or be placed in segregation. However, plaintiff is not required to incriminate himself in these two choices. Furthermore, plaintiff does not allege that he has reported any enemy concerns to PBSP officials, nor made any self-incriminating statements. He has simply agreed to report known enemy concerns to prison staff. Plaintiff has failed to state a cognizable claim for violation of the privilege against self-incrimination and the court finds that amendment would be futile. Accordingly, this portion of plaintiff's claim is dismissed with prejudice.

Plaintiff claims that his inmate classification hearing concerning his willingness to report on enemy concerns or face placement in administrative segregation violated his right to due process. Plaintiff also alleges that his assigned staff assistant, defendant S. Preston, did not assist plaintiff during the hearing.

The Supreme Court has held that prisoners have no constitutional right or interest independently protected by the Due Process Clause to be free from placement in administrative segregation. Hewitt v. Helms, 459 U.S. 460, 468 (1983). Allegations by a prisoner that he was denied due process in connection with the decision to administratively segregate him present a constitutionally cognizable claim if: (1) prison officials are narrowly restricted by state statutes or regulations to impose the specific deprivation at play, for example, an indeterminate term of segregation in the SHU, and (2) the liberty in question is one of "real substance." Sandin v. Conner, 515 U.S. 472, 477-487 (1995). A liberty interest of "real substance" generally will be limited to freedom from (1) restraint that imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," id. at 484, or (2) state action that "will inevitably affect the duration of [a] sentence," id. at 487.

California statutes and prison regulations narrowly restrict the power of prison officials to administratively segregate prisoners. Toussaint v. McCarthy, 801 F.2d 1080, 1098 (9th Cir. 1986), cert. denied, 481 U.S. 1069 (1987). In Wilkinson v. Austin, 125 S. Ct. 2384, 2394-95 (2005), the Supreme Court held that an inmate's indefinite placement in a "supermax" facility, where they are not eligible for parole consideration, imposes an "atypical and significant hardship within the correctional context." Because indefinite placement in California's SHU generally renders inmates ineligible for parole consideration, it appears that California prisoners also have a liberty interest in not being placed indefinitely in the SHU. Accord id. at 2395 (necessity of harsh conditions in light of danger that high-risk inmates pose to prison officials and other inmates does not diminish conclusion that conditions rise to a liberty interest in their avoidance).

The court notes that plaintiff was not actually housed in administrative segregation, based on his agreement to follow the PBSP policy and report enemy concerns. However, liberally construed, plaintiff has alleged a cognizable due process claim for defendants' actions in allowing a copy of his CDCR Chrono to be delivered to another inmate and the resulting failure to keep the contents of the hearing confidential. The court will order service of this claim.

Plaintiff's due process claim based upon defendant Preston's alleged failure to assist plaintiff, a mental health inmate, in his classification hearing is not cognizable. Plaintiff maintains that defendant Preston did not intervene on Plaintiff's behalf at the hearing, communicate plaintiff's fears to the UCC committee, and inform plaintiff of his rights. However, Plaintiff alleges that he did communicate his concerns and fears to the hearing committee, but that they did not accept his concerns. As set forth in his amended complaint, plaintiff's ability to articulate his concerns was memorialized in the CDCR Chrono. Plaintiff does not allege that he failed to understand his rights at the hearing, but rather that he was compelled to agree to the PBSP policy, after he expressed his concerns and fears about his agreeing to do so. The court concludes that any amendment would be futile and will DISMISS plaintiff's due process claim against defendant S. Preston for failure to assist plaintiff at his classification hearing with the UCC.

### 3. Equal Protection

Plaintiff claims that defendants McGrath, Alameida, Polk, Nimrod, Wheeler, Lucarelli, and Browman violated his right to equal protection because they treated plaintiff differently than other PBSP inmates. Plaintiff maintains that other similarly situated inmates were not required to agree to the policy to inform PBSP officials of enemy concerns, or face placement in administrative segregation.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985) (quoting Plyler v. Doe, 457 U.S. 202, 216 (1982)). When challenging his treatment with regard to other prisoners, courts have held that in order to present an equal protection claim a prisoner must allege that his treatment is invidiously dissimilar to that received by other inmates. More v. Farrier, 984 F.2d 269, 271-72 (8th Cir. 1993) (absent evidence of invidious discrimination, federal courts should defer to judgment of prison officials); Timm v. Gunter, 917 F.2d 1093, 1099 (8th Cir. 1990) (same). Liberally construed, plaintiff's allegations state a cognizable equal protection claim. The court will order service of this claim.

### 4. State Law Claims

Plaintiff alleges that defendants' requirement that he report on enemy concerns violates various provisions of California constitutional, statutory and tort law. The federal supplemental jurisdiction statute provides that "'district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.'" 28 U.S.C. § 1367(a).

Liberally construed, plaintiff's allegations satisfy the statutory requirement. Accordingly, the court will exercise supplemental jurisdiction over plaintiff's state law claims.

\\\

\\\

1  **5.    Named Defendants**

2      a.    <u>Defendants CDCR and E. Alameida, in his official capacity</u>

Plaintiff names the California Department of Corrections and Rehabilitation ("CDCR") and Edward Alameida, the former Director of the CDCR, as liable for actions taken in his official capacity as the director of the State prison system.

The Eleventh Amendment bars from the federal courts suits against a state by its own citizens, citizens of another state or citizens or subjects of any foreign state. See <u>Atascadero State Hosp. v. Scanlon</u>, 473 U.S. 234, 241 (1985). This Eleventh Amendment immunity also extends to suits against a state agency, <u>see, e.g.</u>, <u>Allison v. California Adult Authority</u>, 419 F.2d 822, 823 (9th Cir. 1969) (California Adult Authority and San Quentin Prison not subject to suit); <u>Bennett v. California</u>, 406 F.2d 36, 39 (9th Cir.) (California Adult Authority and CDC not subject to suit), <u>cert. denied</u>, 394 U.S. 966 (1969), and to suits for damages against state officials acting in their official capacities, see <u>Pennhurst State School & Hosp. v. Halderman</u>, 465 U.S. 89, 97-121 (1984). Such immunity includes state law claims brought against a state in federal court under the supplemental jurisdiction statute. See <u>Raygor v. Regents of the University of Minnesota, et al.</u>, 534 U.S. 533, 541-42 (2002).

However, a state official may be sued for prospective injunctive relief from continuing or impending state action which violates the federal constitution or a federal statute. See <u>Kentucky v. Graham</u>, 472 U.S. 159, 167 n.14 (1985); <u>Ex parte Young</u>, 209 U.S. 123, 159-60 (1908); <u>Armstrong v. Wilson</u>, 124 F.3d 1019, 1026 (9th Cir. 1997).

Plaintiff's suit against the California Department of Corrections and Rehabilitation (CDCR) is barred by the Eleventh Amendment. Plaintiff's claim for damages against E. Alameida in his official capacity as the former director of the California Department of Corrections is also barred by the Eleventh Amendment, as is plaintiff's claim against defendant Alameida for prospective injunctive relief, because Alameida is no longer in a position to provide injunctive relief. Accordingly, all claims against defendants CDCR and Edward Alameida in his official capacity are dismissed with prejudice.

\\\

b. <u>Individual capacity</u>

Liberally construed, plaintiff's allegations regarding the following individuals' involvement are sufficient to support his claims of individual and/or supervisory liability: E. Alameida, in his individual capacity; Joe McGrath, PBSP Warden; Lethal Polk, PBSP Associate Warden; PBSP Correctional Couselor M.J. Nimrod; PBSP Correctional Counselor T.D. Lucarelli; PBSP Captain S. Wheeler; PBSP Correctional Couselor J. Browman, and PBSP Correctional Officer S. Preston. Accordingly, the court will order the complaint served on these defendants.

**6. Damages**

Plaintiff seeks relief in the form of injunctive relief and requests general, compensatory, and punitive damages for mental and emotional distress.

"No Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Failure to allege and establish an appropriate physical injury is ground for dismissal, see <u>Zehner v. Trigg</u>, 952 F. Supp. 1318, 1321-35 (S.D. Ind.) (dismissing action for damages because no plaintiff developed physical injury by exposure to asbestos while in prison), <u>aff;'d</u>, 133 F.3d 459 (7th Cir. 1997). Section 1997e(e)'s bar on these suits by prisoners is a permissible restriction on prisoners' ability to recover damages under 42 U.S.C. § 1983 and does not violate equal protection or separation of powers doctrine. See <u>Zehner v. Trigg</u>, 133 F.3d 459, 461-64 (7th Cir. 1997).

Claims for declaratory and injunctive relief are unaffected by § 1997e(e); therefore, the statute "does not nullify the Eighth Amendment by leaving violations of it without a remedy." <u>Zehner</u>, 133 F.3d at 464; <u>accord</u> <u>Harper v. Showers</u>, 174 F.3d 716, 719 (5th Cir. 1999); <u>Davis v. District of Columbia</u>, 158 F.3d 1342, 1346 (D.C. Cir. 1998). Similarly, § 1997e(e) does not bar claims for compensatory damages premised on other injuries sustained from the alleged constitutional violation. See <u>Oliver</u>, 289 F.3d at 630 (§ 1997e(e) inapplicable to claims for compensatory damages not premised on mental or emotional injury); <u>see also</u> <u>Robinson v. Page</u>, 170 F.3d 747, 748-49 (7th Cir. 1999) (only the claim for damages for mental or emotional injury

1  should be dismissed). Nor does it bar claims seeking nominal or punitive damages that are not
2  premised on any specified injury. See Oliver, 289 F.3d at 630 (§ 1997e(e) inapplicable to claims
3  for nominal and punitive damages not premised on mental or emotional injury); Doe v. Delie,
4  257 F.3d 309, 314 n.3 (3d Cir. 2001) (holding that nominal and punitive damages claims are
5  unaffected by § 1997e(e)). Accordingly, plaintiff's claims for compensatory damages based
6  upon his mental and emotional distress are DISMISSED with prejudice.

## CONCLUSION

1. The California Department of Corrections and Rehabilitation and E. Alameida, in his official capacity, are DISMISSED as defendants from this action.

2. Plaintiff's due process claim for the violation of his right against self incrimination, his due process claim against defendant S. Preston for failure to assist plaintiff at his classification hearing with the UCC, and his claims for compensatory damages based upon his mental and emotional injury are all DISMISSED with prejudice.

3. The clerk shall issue a summons and the United States Marshal shall serve, without prepayment of fees, copies of the amended complaint in this matter (docket no. 12), all attachments thereto, and copies of this order on the following defendants: E. ALAMEIDA, in his individual capacity, CDCR in Sacramento, California; JOE MCGRATH, PBSP Warden; LETHAL POLK, PBSP Associate Warden; M.J. NIMROD, PBSP Correctional Couselor; T.D. LUCARELLI, PBSP Correctional Counselor; S. WHEELER, PBSP Captain; J. BROWMAN, PBSP Correctional Couselor, and S. PRESTON, PBSP Correctional Officer. The clerk shall also serve a copy of this order on plaintiff.

4. In order to expedite the resolution of this case, the court orders as follows:

   a. No later than **sixty (60) days** from the date of this order, defendants shall file a motion for summary judgment or other dispositive motion, or shall notify the court that defendant is of the opinion that this case cannot be resolved by such a motion. The motion shall be supported by adequate factual documentation and shall conform in all respects to Federal Rule of Civil Procedure 56.

\\\

**<u>Defendants are advised that summary judgment cannot be granted, nor qualified immunity found, if material facts are in dispute.  If defendants are of the opinion that this case cannot be resolved by summary judgment, they shall so inform the court prior to the date the summary judgment motion is due</u>**.

All papers filed with the court shall be promptly served on plaintiff.

      b.     Plaintiff's opposition to the dispositive motion shall be filed with the court and served on defendant no later than **thirty (30) days** from the date defendant's motion is filed. The Ninth Circuit has held that the following notice should be given to plaintiffs:

> The defendants have made a motion for summary judgment by which they seek to have your case dismissed.  A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case.
> 
> Rule 56 tells you what you must do in order to oppose a motion for summary judgment.  Generally, summary judgment must be granted when there is no genuine issue of material fact-- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case.  When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says.  Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendant's declarations and documents and show that there is a genuine issue of material fact for trial.  If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you.  If summary judgment is granted in favor of defendants, your case will be dismissed and there will be no trial.

See <u>Rand v. Rowland</u>, 154 F.3d 952, 963 (9th Cir. 1998) (en banc).

Plaintiff is advised to read Rule 56 of the Federal Rules of Civil Procedure and <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (holding party opposing summary judgment must come forward with evidence showing triable issues of material fact on every essential element of his claim).  Plaintiff is cautioned that failure to file an opposition to defendants' motion for summary judgment may be deemed to be a consent by plaintiff to the granting of the motion, and granting of judgment against plaintiff without a trial.  See <u>Ghazali v. Moran</u>, 46 F.3d 52, 53-54 (9th Cir. 1995) (per curiam); <u>Brydges v. Lewis</u>, 18 F.3d 651, 653 (9th

1  Cir. 1994).

2          c.       Defendant <u>shall</u> file a reply brief no later than **fifteen (15) days** after
3  plaintiff's opposition is filed.

4          d.       The motion shall be deemed submitted as of the date the reply brief is due.
5  No hearing will be held on the motion unless the court so orders at a later date.

6      5.     All communications by the plaintiff with the court must be served on defendants,
7  or defendants' counsel once counsel has been designated, by mailing a true copy of the
8  document to defendant or defendants' counsel.

9      6.     It is plaintiff's responsibility to prosecute this case. Plaintiff must keep the court
10 and the parties informed of any change of address and must comply with the court's orders in a
11 timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute
12 pursuant to Federal Rule of Civil Procedure 41(b).

13     7.     Discovery may be taken in accordance with the Federal Rules of Civil Procedure.
14 No further court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16-1 is
15 required before the parties may conduct discovery.

16     IT IS SO ORDERED.

17 DATED:   2/13/2007              /s/ Ronald M. Whyte
                                                 RONALD M. WHYTE
18                                                  United States District Judge

1
2  This is to certify that on   2/14/2007                              , a copy of this ruling was
   mailed to the following:
3
4  Robert Kelly Walters
   E-01047
5  Pelican Bay State Prison
   P.O. Box 7500
6  Crescent City, CA  95531-7500

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Order of Service; Partial Dismissal Order
P:\pro-se\sj.rmw\cr.04\Walters818srvmisc            14