*E-FILED - 8/12/08*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ROBERT KELLY WALTERS, | No. C 04-0818 RMW (PR) |
| Plaintiff, | **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| EDWARD ALAMEIDA, et al., | |
| Defendants. | (Docket Nos. 47, 73) |

**INTRODUCTION**

Plaintiff filed this pro se civil rights complaint pursuant to 42 U.S.C. § 1983, alleging that prison staff at Pelican Bay State Prison ("PBSP") violated his Eighth Amendment, equal protection, and due process rights by negligently distributing a copy of a document from plaintiff's file to another inmate.[1] Plaintiff seeks injunctive relief and monetary damages.

Defendants move for summary judgment, alleging that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law.[2] Defs.' Mot. for

---

1. The operative complaint is plaintiff's first amended complaint (Docket No. 12), which is the one cited in this order.

2. Defendants also contend that they are protected from suit by the doctrine of qualified immunity. MSJ at 10. Because the court finds that defendants are entitled to judgment as a

Order Granting Defendants' Motion for Summary Judgment
G:\Pro-Se\SJ.RMW\CR.04\Walters818.msj.grant.md

Summ. J., P. & A ("MSJ") at 1.  Plaintiff has filed an opposition.

After a review of the record, the court concludes that plaintiff has not shown evidence that precludes summary judgment.  Accordingly, the court GRANTS defendants' motion for summary judgment as to all federal claims, which, along with the complaint, are hereby DISMISSED.  The court declines to exercise jurisdiction over plaintiff's state tort claims.  Accordingly, plaintiff's state law claims are DISMISSED WITHOUT PREJUDICE.

## BACKGROUND

Plaintiff's claims arise from the alleged distribution of a copy of a prison form (CDCR 128G) memorializing plaintiff's agreement to "conduct himself as an individual and abstain from violence, participate in an education or work incentive program, and notify staff immediately of any enemy concern."  Pl.'s Opp. to MSJ, P. & A ("Pl.'s Opp.) at 2; MSJ at 3 & Decl. of Barlow, Ex. A at 1.

The factual background of this claim is as follows.  Plaintiff, who is serving a life sentence without the possibility of parole, was transferred to PBSP in April 2003.[3]  Order of Partial Dismissal ("OPD") at 2; MSJ, Ex. A, Pt. 1 (Decl. of Maiorino) at 4.  That same month, plaintiff appeared before the prison's Unit Classification Committee ("UCC"), which asked plaintiff to agree to the terms stated above.  OPD at 2.  According to plaintiff, he agreed to terms after the committee informed him that if he refused, he would be placed in administrative segregation.[4]  Id.  Plaintiff contends, and defendants dispute, that a copy of this form was negligently delivered to another PBSP inmate.  Pl.'s Opp. at 3; MSJ at 4.  Plaintiff asserts that this document, by stating that he agreed to report enemy concerns,

---

matter of law on other grounds, the court need not reach the question of qualified immunity.

3. "Plaintiff was transferred from High Desert State Prison (High Desert) due in part to enemy concerns at High Desert."  MSJ, Decl. of Barlow ¶ 5.

4. At the time plaintiff appeared before the UCC in 2003, he was housed temporarily in administrative segregation owing to a paucity of beds in orientation housing.  Compl. ¶ 21; MSJ at 3.

Order Granting Defendants' Motion for Summary Judgment
G:\Pro-Se\SJ.RMW\CR.04\Walters818.msj.grant.md          2

identified him to other inmates as an informant, thereby making him the target of violence and retribution from other inmates. Pl.'s Opp. at 3. He further asserts, and defendants dispute, that other similarly situated inmates were not asked to sign such a document or make a similar agreement. Id.

Defendants contend that when plaintiff arrived at PBSP, the prison "had been placed on 'lockdown' for approximately two or three years." Reply to Opp. to MSJ at 5. At this time, "the process of returning Pelican Bay to a normal program had begun." Id. "As part of this process, each inmate who appeared for classification was asked whether he would abstain from violence, participate in an educational or work-incentive program, and notify staff immediately of any enemy concern." Id. "These were routine questions that all inmates were asked in order to ensure the safety and security of Pelican Bay employees and staff." MSJ at 8; Pl.'s Opp., Ex. 6A (Warden's Level Decision) at 2. "If an inmate agrees to report enemy concerns to correctional staff he is allowed to exercise on the yard of his housing unit with all the other inmates. Thus all inmates using the exercise yard have agreed to report enemy concerns to correctional staff." MSJ, Decl. of Polk ¶ 5. "If an inmate does not agree to report enemy concerns he is not subjected to Administrative Segregation because of his refusal. Instead, he is simply not allowed to exercise on the yard with all the other inmates because to do so may endanger him and subject him to violence." Id.

## DISCUSSION

**I.   Standard of Review**

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

The party moving for summary judgment bears the initial burden of identifying those

1  portions of the pleadings, discovery and affidavits which demonstrate the absence of a
2  genuine issue of material fact. Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986). Where
3  the moving party will have the burden of proof on an issue at trial, it must affirmatively
4  demonstrate that no reasonable trier of fact could find other than for the moving party. But
5  on an issue for which the opposing party will have the burden of proof at trial, as is the case
6  here, the moving party need only point out "that there is an absence of evidence to support
7  the nonmoving party's case." Id. at 325.

8  Once the moving party meets its initial burden, the nonmoving party must go beyond
9  the pleadings and, by its' own affidavits or discovery, "set forth specific facts showing that
10 there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The court is only concerned with
11 disputes over material facts and "factual disputes that are irrelevant or unnecessary will not
12 be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). It is not the task of
13 the court to scour the record in search of a genuine issue of triable fact. Keenan v. Allen, 91
14 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying, with
15 reasonable particularity, the evidence that precludes summary judgment. Id. If the
16 nonmoving party fails to make this showing, "the moving party is entitled to judgment as a
17 matter of law." Celotex Corp v. Catrett, 477 U.S. at 323.

18 **II.    Plaintiff's Federal Claims**

19 Plaintiff alleges that (A) PBSP's misdelivery of his CDRC form to another inmate
20 violated his right of personal safety under the Eighth Amendment; (B) PBSP's asking him to
21 inform prison staff of enemy concerns violated his right to equal protection; (C) the
22 misdelivery of the CDRC form violated his right to due process; and (D) defendant Nimrod
23 failed to initiate an investigation into plaintiff's claims, thereby acting with deliberate
24 indifference to plaintiff's personal safety. Pl.'s Opp. at 5, 12, 14, 18.

25    **A.    Eighth Amendment**

26 Plaintiff contends that PBSP's distribution of a copy of the form resulted in damages
27 to him, in violation of his Eighth Amendment right to personal safety. Pl.'s Opp. at 3.

28

Order Granting Defendants' Motion for Summary Judgment
G:\Pro-Se\SJ.RMW\CR.04\Walters818.msj.grant.md            4

1  Defendants dispute that the alleged misdistribution ever occurred.  MSJ at 4.

2  The Constitution does not mandate comfortable prisons, but neither does it permit
3  inhumane ones.  See Farmer v. Brennan, 511 U.S. 825, 832 (1994).  The treatment a prisoner
4  receives in prison and the conditions under which he is confined are subject to scrutiny under
5  the Eighth Amendment.  See Helling v. McKinney, 509 U.S. 25, 31 (1993).  The Amendment
6  imposes duties on these officials, who must provide all prisoners with the basic necessities of
7  life such as food, clothing, shelter, sanitation, medical care and personal safety.  See Farmer,
8  511 U.S. at 832; DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 199-
9  200 (1989); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982).  A prison official violates
10 the Eighth Amendment when two requirements are met:  (1) the deprivation alleged must be,
11 objectively, sufficiently serious, see Farmer, 511 U.S. at 834 (citing Wilson v. Seiter, 501
12 U.S. 294, 298 (1991)), and (2) the prison official possesses a sufficiently culpable state of
13 mind, i.e., the offending conduct was wanton, id. (citing Wilson, 501 U.S. at 297).

14 In determining whether a deprivation of a basic necessity is sufficiently serious to
15 satisfy the objective first component of an Eighth Amendment claim, a court must consider
16 the circumstances, nature, and duration of the deprivation.  The more basic the need, the
17 shorter the time it may be withheld.  See Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir.
18 2000).  Substantial deprivations of shelter, food, drinking water or sanitation for four days,
19 for example, are sufficiently serious to satisfy the objective component of an Eighth
20 Amendment claim.  See id. at 732-733.

21 What is required to establish the second element of an unnecessary and wanton
22 infliction of pain varies according to the nature of the alleged constitutional violation.
23 Whitley v. Albers, 475 U.S. 312, 320 (1986).   In cases concerning conditions of
24 confinement, such as this one, the necessary state of mind is one of "deliberate indifference."
25 See, e.g., Farmer, 511 U.S. at 834 (inmate safety); Helling, 509 U.S. at 32-33 (inmate health);
26 Wilson, 501 U.S. at 302-03 (general conditions of confinement); Estelle v. Gamble, 429 U.S.
27 97, 104 (1976) (inmate health).  Neither negligence nor gross negligence will constitute
28

Order Granting Defendants' Motion for Summary Judgment
G:\Pro-Se\SJ.RMW\CR.04\Walters818.msj.grant.md         5

deliberate indifference. See Farmer, 511 U.S. at 835-36 & n.4; see also Estelle, 429 U.S. at 106 (establishing that deliberate indifference requires more than negligence). A prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the standard for criminal recklessness is met, i.e., the official knows of and disregards an excessive risk to inmate health or safety. See Farmer, 511 U.S. at 837. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. See id. An Eighth Amendment claimant need not show, however, that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm. See id. at 842.

Plaintiff has not established either element of an Eighth Amendment claim. As to the first, and objective, Farmer element, he has not shown that the alleged deprivation was sufficiently serious. For purposes of this order alone, the court assumes, without deciding, that prison staff had a duty to keep this information confidential and did negligently distribute a copy of the CDRC form to another inmate. The print on plaintiff's form would not have given the receiving inmate any information specific and individual to plaintiff alone because every general population inmate admitted at that time was asked to agree to the terms. If they did not, they were not allowed to exercise in the same yard as those who had agreed, such as plaintiff.

Furthermore, plaintiff has presented no evidence that the alleged misdistribution of the form resulted in unwanted publication of the information contained in the form. The inmate who allegedly received the form, Alejandro Verdugo, made a declaration, which plaintiff filed with his opposition.[5] Pl.'s Opp., Ex. 12-A. In that document, Verdugo asserts that he received a piece of mail addressed to plaintiff and opened it to see whether the

---

5. The document is entitled "Affidavit." Because the document is not notarized, the court will regard it as a declaration submitted under the penalty of perjury, rather than an affidavit.

Order Granting Defendants' Motion for Summary Judgment
G:\Pro-Se\SJ.RMW\CR.04\Walters818.msj.grant.md          6

1 correspondence was simply mislabelled and was in fact was intended for him (Verdugo). <u>Id.</u>
2 at 2. Upon finding plaintiff's CDRC form in the envelope, Verdugo informed plaintiff that
3 he had plaintiff's mail. <u>Id.</u> This declaration does not state whether Verdugo read the
4 document (other than seeing that plaintiff's name appeared on it) or that, if he did indeed
5 read it, that he informed any other person of its contents. This absence of evidence gravely
6 undercuts the strength of plaintiff's cause of action. Specifically, plaintiff asserts that the
7 negligent delivery of the document exposed him to risk because other inmates knew him to
8 be an informant. However, it appears from the record that Verdugo is the sole inmate who
9 saw the document and who was perhaps the only inmate who gathered the information from
10 the alleged misdelivery. Furthermore, plaintiff may have himself further disseminated the
11 information. Plaintiff, as discussed in detail below, asked other inmates whether the UCC
12 asked them to make the same or a similar agreement, and, in so doing, informed these
13 inmates of his experience in front of the UCC in 2003. Plaintiff, then, himself was perhaps
14 responsible in part for publicizing this information.

15 As to the second element, plaintiff has not shown that defendants acted with deliberate
16 indifference and in fact he describes their conduct as "negligent." This is an insufficient
17 showing. As stated above, neither negligence nor gross negligence constitutes deliberate
18 indifference. Even if plaintiff means by his use of "negligent" that defendants' acts
19 constituted a sort of negligence beyond the legal definition of the term, plaintiff has not
20 alleged facts nor shown that defendants knew of a risk and disregarded an excessive risk to
21 plaintiff's safety.

22 Reading the record in the light most favorable to plaintiff, the court concludes that
23 plaintiff has not met his burden to point to evidence that precludes summary judgment.
24 Accordingly, plaintiff's Eighth Amendment claims are DISMISSED.

### B.     Equal Protection

Order Granting Defendants' Motion for Summary Judgment
G:\Pro-Se\SJ.RMW\CR.04\Walters818.msj.grant.md          7

1    Plaintiff contends, contrary to defendants' assertions, that not all general population
2 inmates were asked to inform PBSP about enemy concerns and therefore his being asked to
3 perform such an act violates his right to equal protection. Pl.'s Opp. at 14. Defendants assert
4 that these "routine questions," which were put to all inmates, "were asked in order to ensure
5 the safety and security of Pelican Bay employees and inmates." MSJ at 5.

6    "The Equal Protection Clause of the Fourteenth Amendment commands that no State
7 shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is
8 essentially a direction that all persons similarly situated should be treated alike." City of
9 Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985) (quoting Plyler v. Doe, 457
10 U.S. 202, 216 (1982)). To state a claim under 42 U.S.C. § 1983 for a violation of the Equal
11 Protection Clause, a plaintiff must show that the defendants acted with an intent or purpose to
12 discriminate against the plaintiff based upon membership in a protected class. Washington v.
13 Davis, 426 U.S. 229, 239-40 (1976). Inherently "suspect distinctions" that define a
14 protected class include race, religion, and alienage. See City of New Orleans v. Dukes, 427
15 U.S. 297, 303 (1976). Prisoners are not a protected class for equal protection purposes. See
16 Hampton v. Hobbs, 106 F.3d 1281, 1286 (6th Cir. 1997).

17    Where state action does not implicate a fundamental right or a suspect classification,
18 the plaintiff can establish an equal protection claim by demonstrating that he "has been
19 intentionally treated differently from others similarly situated and that there is no rational
20 basis for the difference in treatment." Squaw Valley Development Co. v. Goldberg, 375 F.3d
21 936, 944 (9th Cir. 2004). The plaintiff may pursue such an equal protection claim by raising
22 a triable issue of fact as to whether the defendants' asserted rational basis was merely a
23 pretext for differential treatment. Id. at 945-46.

24    Plaintiff's claim is without merit. First, he has not shown that he is a member of a
25 protected class. Prisoners are not a suspected class and plaintiff has not alleged or
26 demonstrated that he is a member of such a class. Second, he has not shown that defendants'
27 action implicated a fundamental right, as the court's analysis of his other constitutional
28

1  claims makes clear.  Third, defendants have offered a legitimate reason for the allegedly
2  differential treatment, viz., to ensure the safety of Pelican Bay staff and inmates.  Plaintiff
3  has not shown that defendants' proffered reason lacks a reasonable basis or that it is
4  pretextual.  Accordingly, plaintiff's equal protection claims are DISMISSED.

**C.     Due Process**

Plaintiff contends that the negligent misdelivery of the form violated his due process rights.  Pl.'s Opp. at 12.

The Due Process Clause of the Fourteenth Amendment protects individuals against governmental deprivations of "life, liberty or property," as those words have been interpreted and given meaning over the life of our republic, without due process of law.  Board of Regents v. Roth, 408 U.S. 564, 570-71 (1972); Mullins v. Oregon, 57 F.3d 789, 795 (9th Cir. 1995).  The touchstone of due process is protection of the individual against arbitrary action of government, whether the fault lies in a denial of fundamental procedural fairness (i.e., denial of procedural due process guarantees) or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective (i.e., denial of substantive due process guarantees).  See County of Sacramento v. Lewis, 523 U.S. 833, 845-46 (1998).  An essential principle of due process is that a deprivation of life, liberty or property "'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'"  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (citation omitted).

As stated above, plaintiff asserts that defendants' alleged actions were negligent. Plaintiff has not shown that the government denied him procedural due process nor that it exercised power without any reasonable justification.  Even taking plaintiff's allegations as true, defendants' actions were at worst an oversight by the mail deliverer, who gave a correctly addressed envelope to the wrong person, rather than the deprivation of a right which required notice and an opportunity to be heard.

Reading the record in the light most favorable to plaintiff, the court concludes that plaintiff has not met his burden to point to evidence that precludes summary judgment.

Accordingly, plaintiff's due process claims are DISMISSED.

### D. Eighth Amendment Claim Against Defendant Nimrod

Plaintiff contends as part of his section 1983 allegations that defendant Nimrod, who was the Appeals Coordinator at PBSP during the relevant time period, "failed to initiate any type of investigation into plaintiff's claims [] and that defendant Nimrod acted with deliberate indifference to plaintiff's future safety and [to his] safety concerns."[6] Pl.'s Opp. at 18; MSJ at 9.

Plaintiff's claim is without merit because there is no constitutional right to a prison administrative appeal or grievance system. See Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). A provision that merely provides procedural requirements, even if mandatory, cannot form the basis of a constitutionally cognizable liberty interest. See Smith v. Noonan, 992 F. 2d 987, 989 (9th Cir. 1993); see also Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (prison grievance procedure is procedural right that does not give rise to protected liberty interest requiring procedural protections of Due Process Clause). A prison official's failure to process grievances, without more, accordingly, is not actionable under section 1983. See Buckley, 997 F.2d at 495. The instant action presents a very similar set of facts. According to Buckley, and the other cited cases, defendant Nimrod's alleged failures to process and investigate his claims are not actionable under section 1983. Accordingly, this claim is DISMISSED.

### III. Plaintiff's State Law Claims

As part of his federal complaint, plaintiff included two state tort claims, one alleging that prison officials acted negligently in breach of mandatory duties (Cal. Civ. Code § 1714), and the second alleging negligent misrepresentation (Cal. Civ. Code §§ 1572, 1710), which placed him at risk of injury and caused plaintiff to suffer emotional distress. OPD at 3. In a

---

7. Oddly, plaintiff also states that he "is not attempting to hold Nimrod liable based on his role in the appeals process." Pl.'s Opp. at 19. Even though he issues this denial, plaintiff's claims are exactly as he says they are not, viz., that he is attempting to hold defendant Nimrod liable based on his role in the appeals process.

Order Granting Defendants' Motion for Summary Judgment
G:\Pro-Se\SJ.RMW\CR.04\Walters818.msj.grant.md        10

1 previous order, the court decided to exercise supplementary jurisdiction over these state
2 claims. (Docket No. 20). The court, however, concludes that it need not exercise jurisdiction
3 over plaintiff's state tort claims.

4     Where the court has dismissed all federal claims on the merits, rather than for lack of
5 subject matter jurisdiction, it has discretion under 28 U.S.C. § 1367(c) to adjudicate or to
6 dismiss the remaining state law claims. See <u>Ove v. Gwinn</u>, 264 F.3d 817, 826 (9th Cir.
7 2001). Now that the court has concluded that plaintiff's federal claims must be dismissed as
8 a matter of law, the continued exercise of jurisdiction over plaintiff's state claims is
9 unwarranted. The court declines to exercise jurisdiction over these claims. Accordingly,
10 plaintiff's state claims are DISMISSED WITHOUT PREJUDICE.

## CONCLUSION

12     The court concludes that defendants are entitled to judgment as a matter of law as to
13 all federal claims. Accordingly, defendants' motion for summary judgment (Docket No. 47)
14 is GRANTED as to all federal claims. All federal claims and the complaint are hereby
15 DISMISSED. The court declines to exercise jurisdiction over plaintiff's state tort claims.
16 Accordingly, plaintiff's state claims are DISMISSED WITHOUT PREJUDICE.

17     Plaintiff's motion to bar any reply or briefing by defendants to plaintiff's opposition
18 (Docket No. 73) is DENIED AS MOOT.

19     The clerk shall terminate all pending motions, enter judgment, and close the file.

20     **IT IS SO ORDERED.**

21 DATED: 8/8/08

                                            RONALD M. WHYTE
22                                             United States District Judge